## Chicago Curtain Stretcher Co. v. Paepcke-Leicht Lumber Co.

1. CONTRACTS—*A Modified Acceptance is a Rejection.*—A modified acceptance of a proposition is in effect a rejection of the offer.

Assumpsit, for goods sold and delivered.   Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902.  Affirmed.   Opinion filed June 5, 1903.

BALL & LUNSFORD, attorneys for appellant.

SMITH, HELMER & MOULTON, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This was an action of assumpsit to recover for certain lumber sold and delivered.   The defendant filed a plea of the general issue and also of set-off for damages sustained by reason of the refusal of appellee to furnish lumber according to an alleged contract for the sale of " 500,000 feet of first and second well-seasoned, clear, basswood lumber, in widths and lengths and upon the terms and conditions set out in certain written correspondence by and between the said plaintiff and defendant in words and figures as follows :

'CHICAGO, April 15, 1899.

CHICAGO CURTAIN STRETCHER CO., CHICAGO.

GENTLEMEN :   We will deliver to you 450 M of 1 ' Basswood, grade known as curtain stretcher stock, on the following conditions:   200 M to be 3 "—5½ to 6 " & 8½ to 9." wide—6-7-12 & 14 " long :   250 M 4 " full wide and up— 6-7-12 & 14 " long.

This stock will run about 80% 12 '.   You are to commence taking this stock about July 1st, and have one-half of the stock moved by January 1st, 1900.   Price for the stock delivered between July 1st and January 1st, to be $20 per M, F. O. B. your factory.   The balance, or 250 M of this stock, is to be accepted between January 1st, and July 1st, 1900.   The said 250 M delivered between Janu-

250    APPELLATE COURTS OF ILLINOIS.

VOL. 108.] Chi. Curtain Stretcher Co. v. Paepcke-Leicht Lumber Co.

ary 1st and July 1st, 1900, is to be $21 per M, delivered at your factory.

It is further understood that any amount over 200 M mentioned to be accepted before January 1st, shall be charged to you at $21 per M—or in other words, you are to get 200 M at $20 and 250 M at $21. Of course you understand that you have a standing order for 50 M at $20, which will make a total purchase of one-half million from us. One-half at $20 and one-half at $21.

It is understood that we are to deliver this stock to you as you want it, and it is further understood that you are to accept this stock from time to time between the above said dates.

Terms 2% on 10th of month following delivery. Account not to exceed $600 at any one time. Should account run over $600 it is agreed that Mr. Walter A. Mahr give us a personal guarantee for such amount.

By your acceptance and acceptance of Mr. Mahr of this communication, will answer as a contract.

Yours truly,<br>
PAEPCKE-LEICHT LUMBER CO.,<br>
Per Conklin.' "

To which letter the said defendant, Chicago Curtain Stretcher Company, made the following reply:

" CHICAGO, ILL., Apr. 18, 1899.

PAEPCKE–LEICHT LUMBER CO., CITY.

GENTLEMEN: We wish to add and to form part of the contract dated the 15th inst. the words " first and second well season clear bass wood " as descriptive of the curtain stretcher stock which you are to furnish us.

Also the time on the ($600) credit is entirely omitted which should be (90) days from the date of invoice, as well as the credit guaranteed by our Mr. Mayr.

With these conditions the contract is hereby accepted.

Yours respectfully,<br>
CHICAGO CURTIN STRETCHER CO.,<br>
CHARLES CARLSON, Pres.<br>
W. A. MAYR."

And to which last letter of defendant the plaintiff herein replied as follows, to wit:

" CHICAGO, April 21, 1899.

CHICAGO CURTAIN STRETCHER CO., CITY.

GENTLEMEN: Replying to your favor of the 18th inst.,

there was nothing said in conversation between yourselves and our Mr. Wiedemann regarding 90 days terms. He understood the terms were to be the same as we have been selling you right along, and do not see why we should deviate from these. You no doubt are perfectly aware of the agreement which we have with you, which is to the effect that you are to owe us not over $600 at any one time, without Mr. Mahr's guarantee. The understanding also was, that you no doubt would be able to discount on the 10th of the month following. purchase; however, in the event of your not being able to take advantage of the discount, we would be perfectly willing to grant you 60 days time to the amount of $600. As far as the grade is concerned, this we understand will be 1st and 2nd, same as purchased by you in the past.         Yours very truly,

                    PAEPCKE–LEICHT LUMBER CO.
.H. R. C.                              Per CONKLIN."

Thereafter appellant ordered and received from appellee more than 100,000 feet of lumber; of this, small portions were returned as not in accordance with the contract. This caused some friction. Appellee replied to appellant that it would " continue to" furnish lumber as it had agreed to, and afterward that it " stood ready to fulfill the contract." Appellant made various orders which were not filled. Finally appellee brought suit for the price of lumber admitted to have been delivered; against which claim appellant insists it is entitled to be allowed by way of recoupment the entire purchase price and also about $1,000 by way of set-off for damages sustained by reason of the failure of appellee to fulfill the contract alleged by appellant to have been entered into.

A modified acceptance of a proposition is in effect a rejection of the offer. Anglo-American Provision Co. v. Prentiss, 157 Ill. 506–514; Kansas City Ry. Co. v. McGuire Manufacturing Co., 108 Ill. App. 258.

The three letters written between April 15th and April 21st did not create a contract. There is not in them anything more than a modified acceptance of propositions. Appellant's plea of set-off and its insistence here are that the orders by it given after April 21st were an acceptance of the offer of appellee and created a contract.

If this be so, the question is, what is the contract so made? Each party understood there was a contract; the difference was and is as to its terms.

The last letter written by appellant contained the following: " We wish to add and to form part of the contract dated the 15th inst. the words 'first and second well season clear bass wood' as descriptive of the curtain stretcher stock which you are to furnish us."

To this appellee replied: " As far as the grade is concerned, this, we understand, will be 1st and 2nd, same as purchased by you in the past."

If by the order of appellant following this, a contract was made, it was for first and second grade, same as appellant had purchased of appellee in the past.

There is no evidence as to the grade that appellant had purchased in the past. There was, because of a failure of minds to meet, either no contract, or the contract as to grade was that described in appellee's letter of April 21st.

As before said, each party thought that a contract had been made; as to what it was there was agreement neither before nor at the trial.

The court below either found that there was no contract or that the contract was such as appellee claimed.

Under either hypothesis the judgment of the Circuit Court must be affirmed.